IN THE

# SUPREME COURT OF NEBRASKA.

## JANUARY TERM, 1874.

PRESENT:

HON. GEORGE B. LAKE, CHIEF JUSTICE.
"    DANIEL GANTT,   } ASSOCIATE JUSTICES.
"    SAMUEL MAXWELL, }

---

SANFORD RECTOR, ADMINISTRATOR, APPELLANT, v. WILLIAM AND CAROLINE ROTTON, APPELLEES.

**Homestead exemption.**—The provisions of the statutes of this State, exempting from attachment, levy, or sale, upon execution or other process, the homestead owned and occupied by any resident, being the head of a family, do not apply to a sale of such homestead under a decree of foreclosure of a mortgage given thereon.

———. The homestead right is a purely personal one which the owner may at any time waive or renounce; and it may be lost, if the owner does not, at the time the levy is made upon it, notify the officer of what he regards as his homestead. *Per* LAKE, CHIEF JUSTICE.

**Mortgage foreclosure:** ORDER OF SALE. In the foreclosure of a mortgage, the court merely enforces a contract of sale voluntarily made by the owner of the premises; and it is not necessary that an order of sale be issued to the officer charged with the execution of the decree. The judgment is his warrant of authority, and none other is required.

**Estoppel.** After a judgment or decree *in rem*, a party to the record is estopped from asserting any claim to the property, either as a homestead or otherwise, which might have been determined in that suit.

171

THIS was an appeal from an order of the district court for Otoe county, setting aside a sheriff's sale of certain real estate under a decree of foreclosure, on the ground that it was a family homestead. The facts are fully set forth in the opinion of the court.

*Mr. Justice Gantt*, having been of counsel in the court below did not participate in the decision of the cause in this court.

*E. F. Warren*, for appellant, Sanford Rector, presented among others the following points:

I.  Can a homestead be sold at judicial sale under a decree of foreclosure of a mortgage thereon, executed by the head or heads of the family?

The homestead right is a purely *personal* one, and personal rights may always be waived by the parties to whom they have accrued, and this even though granted by the constitution. *Emburg v. Conner*, 3 *New York*, 511. *Root v. Wagner*, 30 *Id.*, 17. *Sherman v. McKean*, 38 *Id.*, 266. *Wheeler v. Huston*, 52 *Id.*, 641. *State v. Melogue*, 9 *Ind.*, 196. *In re Cross Bankrupt*, 2 *Dillon Cir. Court Rep.*, 320.

And the execution of a mortgage in proper form is such waiver.

The statutes of this state contain no provisions prohibiting the alienation, sale, or mortgage of the homestead, or any other property exempted from sale, and the mortgage in this case was executed with all the formalities required for the conveyance of real estate.

If the owner cannot make a *conditional* sale, neither can he make an *absolute* one. The inevitable legal and logical conclusion of the argument of Rotton and wife is to prohibit alienation at all; a conclusion repugnant alike to the well settled principles of law and common sense. Such doctrine makes his homestead his prison.

This identical question was expressly decided in the U. S. Circuit Court, in the case of Cross, Bankrupt cited *supra*, in the well considered opinion of Dillon, J.

We insist that an *order of sale* is not such "process" as is contemplated by the statutes. *In re Cross, cited supra. Ely v. Eastwood*, 26 *Ill.*, 107. *Smith v. Mace, Id.*, 150. *Stevens v. Meyer*, 11 *Iowa*, 183.

II. But we insist further that after the decree of the district court was rendered, it became too late for either Rotton or his wife to claim the homestead as exempt from sale. Their only remedy was to have excepted to the same, and prosecuted an appeal or writ of error therefrom to this court, for the reversal of that portion of said decree. Such decree, ordering the property to be sold, is conclusive upon the question of exemption, as well as all others. *Slaughter v. Detiney*, 15 *Ind.*, 49. *Perkins v. Bragg*, 29 *Ind.*, 507. *Haynes v. Meek*, 14 *Iowa*, 320. *Baxter v. Dear*, 24 *Tex.* 17. *Tadlock v. Eccles*, 20 *Id.*, 782. *Lee v. Kingsley*, 13 *Id.*, 68. *Larson v. Reynolds*, 13 *Iowa*, 579.

The matter is *res judicata* in this case, and both are estopped from alleging it to be exempt. Such decree can be assailed for *fraud* only, in a direct proceeding for that purpose. Cases cited *supra*.

III. A final decree in chancery is as conclusive as a judgment at law. *Sibbault's case*, 12 *Pet.*, 492. *Kelsey v. Murphy*, 26 *Penn. State*, 78. *Bank of U. S. v. Beverly*, 1 *How.*, 148. *Low v. Mussey*, 41 *Verm.*, 393.

IV. An adjudication is final and conclusive not only as to the matters actually determined, but as to every other which the parties *might have litigated* and have had decided, both in respect to matter of claim and of defense. *Harris v. Harris*, 36 *Barb.*, 88. *Clemens v. Clemens*, 37 *New York*, 59.

V.  To render a matter *res judicata*, it is not essential that it should have been distinctly and specifically put in issue by the pleadings; it is sufficient that it be shown to have been tried and settled in the former suit. *Biglow v. Winsor*, 1 *Gray*, 299. *Davis v. Talcott*, 12 *New York*, 184. *Bell v. Raymond*, 18 *Conn.*, 91.

VI.  To affirm the order appealed, will be to assert that the district court is powerless to enforce its judgments and decrees solemnly entered, and thus render the administration of justice a farce.

*Seth Robinson*, for appellees.


LAKE, CH. J.

There were several questions urged upon our attention on the argument of this cause, but we shall only consider those necessarily involved in the decision thereof.

I.  The principal question, and the one to which I shall first give attention is, whether, under the law of this state before the act of the legislature, approved February 20, 1873, *General Statutes*, 403, a homestead was liable to sale under a decree foreclosing a mortgage, duly executed by the mortgagor, while it was being occupied by him with his family.

The record discloses that the premises in controversy have for several years last past, and now are, occupied by the said Rotton and wife as their homestead; that on the fourth day of November, 1871, a decree of foreclosure and sale in the usual form was made by the district court, and on the seventeenth day of December, 1872, the lot was sold, in due form, by the sheriff of the county to the plaintiff, in pursuance of said decree.

On an order to show cause why the sale should not be confirmed, the defendants interposed the single objection

that the premises in question, being then occupied as a homestead, could not be sold under the decree; and this appears to be the first time the claim of homestead was set up by them to this property.

Section (five hundred and sixteen) of the code of civil procedure, provides that " a homestead, consisting of any quantity of land not exceeding one hundred and sixty acres, and the dwelling house thereon and its appurtenances, *to be selected by the owner thereof*, and not included in any incorporated city or village, or instead thereof, at the option of the owner, a quantity of contiguous land not exceeding two lots, being within an incorporated town, city or village, and according to the recorded plat of such incorporated town, city or village, or in lieu of the above, a lot or parcel of land not exceeding twenty acres, being within the limits of an incorporated town, city, or village, the said parcel or lot of land not being laid off into streets, blocks and lots, owned and occupied by any resident of the state being the head of a family, shall not be subject to attachment, levy, or sale, upon execution or other process issuing out of any court in this state, so long as the same shall be owned and occupied by the debtor as such homestead."

And by the following section it is further provided, that " whenever a levy shall be made upon the lands and tenements of a householder being the head of a family, whose homestead has not been selected by metes and bounds, such householder may notify the officer at the time of making the levy, of what he regards as his homestead, with a description thereof within the limits above prescribed, and the remainder alone shall be subject to sale under such levy."

Now it is contended by the defendants that the section first above cited affords a complete protection to their homestead, not only as against an attachment, or an ordinary execution issued upon a money judgment, but also

against a decree of court directing it to be sold under a mortgage voluntarily given to secure a *bona fide* indebtedness. In other words, that the legislature intended by this section to prevent any valid judicial sale of mortgaged premises so long as they shall be occupied as a homestead. To this construction of the statute I cannot give my assent.

The homestead act was passed for the purpose of protecting the home of the family against a sale without the consent of the owner. But the right thus guaranteed to the head of a family is a purely personal one which he may at any time waive, or renounce at his own pleasure; and while he is secure in its possession and enjoyment as against the demands of ordinary creditors, yet he is not thereby prohibited from either selling it or investing the proceeds in other property, or pledging it for the payment of his debts if he chooses so to do.

The legislature never intended, by this statute, to assume a guardianship over the owner of a homestead, and render him disqualified to make valid contracts respecting it. It imposes no restraint upon him whatever in this respect; even the wife, when the title is in the husband, has no power to prevent him from making such disposition of it as he may think best.

It is true that in some states it is otherwise, and the wife is required to give her written assent before the husband can alienate, or in any manner deprive the family of the benefit of the homestead when once acquired. But in this state the legislature has not as yet thought proper to invest the wife with any such authority over the property of the husband.

The statute protects the homestead from "attachment, levy, or sale, upon execution or any other process issued out of any court within this state." But this cannot be held to include all judicial sales, most certainly; nor can it apply to a sale under a decree of foreclosure, when no

process whatever is issued to seize the mortgaged premises in order to acquire jurisdiction over them.

In case of foreclosure, which is a proceeding *in rem,* the decree of the court operates directly upon the mortgaged property; no writ or other process of the court is resorted to, to bring it within its jurisdiction. By its judgment the court simply enforces a contract of sale voluntarily made by the owner. Nor is it at all necessary that an order of sale be issued by the clerk of the court to the officer charged with the execution of a decree; the judgment is his warrant of authority, and none other is required.

There can be no doubt, that under the provisions of our exemption act, a mortgaged homestead is not protected from judicial sale under a decree of foreclosure. No other conclusion can be reached from the language employed.

II. But as I have said, the right secured to the head of a family by the homestead act is a personal one, and being personal it may, of course, be waived; it may be lost, even where no contract has been made respecting it, by not claiming the protection of the statute at the proper time.

In section (516) before referred to, we have seen that the homestead shall " *be selected by the owner thereof,*" and in section (517) that when a levy is made upon the lands and tenements of one " whose homestead has not been selected by metes and bounds, he may notify the officer at the time of the levy of what he regards as his homestead." This of course requires affirmative action on the part of the debtor; he is not permitted to lie idly by and permit a sale of his homestead to be made, and then come forward and lay claim to it as exempt from sale. And such was the ruling of the supreme court of Indiana under a statute quite similar to our

own in this respect. *State v. Melogue*, 9 *Ind.*, 196. And how much greater reason for requiring vigilance in asserting the right when the court is proceeding to adjudge a sale upon an issue joined between the parties.

The rule of law, applicable alike to proceedings in equity, and actions at law, undoubtedly is, that after a judgment or decree *in rem* against him, it is too late for a party to the record to assert any claim to the property, either as a homestead or otherwise, which might have been made and determined in that suit. Were it otherwise it would be quite difficult to put an end to litigation. *Slaughter v. Detiney*, 15 *Ind.*, 49. *Perkins v. Bragg*, 29 *Ind.*, 507. *Emburg v. Conner*, 3 *New York*, 511. *Sibbault's Case*, 12 *Pet.*, 492. *Bank of the United States v. Beverly*, 1 *How.*, 134.

· The question, therefore, of whether the property in controversy is exempt under the homestead act must be considered *res judicata*, and not be again opened to discussion. The defendants are estopped from questioning the correctness of the decree, which must hereafter be regarded as a final determination of the rights of the defendants to the subject-matter of the suit.

The decree of the district court must be reversed, and an order entered confirming said sale.

JUDGMENT ACCORDINGLY.

Mr. JUSTICE MAXWELL concurs.